**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KONOLUS I. SMITH,
*Petitioner-Appellant*,

v.

GARRY SWARTHOUT, Warden,
*Respondent-Appellee*.

No. 11-17116

D.C. No.
2:10-cv-00730-
FCD-CHS

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Jr., Senior District Judge, Presiding

Submitted January 13, 2014[*]
San Francisco, California

Filed February 10, 2014

Before: Arthur L. Alarcón, Richard C. Tallman,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Alarcón

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the denial of a 28 U.S.C. § 2254 habeas corpus petition alleging juror bias, misconduct, and related error in connection with a conviction of corporal injury to a spouse and making criminal threats.

Petitioner was charged with four counts. The day after the jury notified the trial court that it had reached a verdict on two of the counts, the foreperson indicated to the court that Juror No. 6 had conducted research and discussed his findings with the jury. After polling the jury, the court accepted the verdict on the two counts reached before the revelation, and declared a mistrial as to the remaining counts and any special findings.

The panel first held that the state court did not unreasonably determine the facts in denying petitioner's claim that Juror No. 6 should have been discharged for bias when the juror unintentionally did not notify the court that his daughter was a neighbor of petitioner and the victim until after the jury had been chosen, then testified that he could be fair and impartial.

The panel next affirmed the denial of relief as to petitioner's claim that the jury considered extrinsic evidence when Juror No. 6 conducted his own research and discussed his findings with the jury, because this did not have a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

substantial and injurious effect or influence on the verdict on the counts of conviction.

The panel also affirmed the denial of relief as to petitioner's claim that he was denied a unanimous jury when Juror No. 1 initially and mistakenly stated during polling that he did not vote to find petitioner guilty of the counts of conviction, but later clarified that he did find petitioner guilty of the substantive crimes set forth in the counts of conviction.

Finally, the panel affirmed the denial of relief as to petitioner's claim that the trial court coerced a verdict by suggesting that if the jury failed to reach a unanimous verdict on a sentencing enhancement, the court would be required to discharge Juror No. 6, seat an alternate, and order the jury to begin deliberations anew.

**COUNSEL**

Quin Anthony Denvir, Davis, California, for Petitioner-Appellant.

Craig Steven Meyers, Deputy Attorney General, Office of the California Attorney General, Sacramento, California, for Defendant-Appellee.

**OPINION**

ALARCÓN, Circuit Judge:

Konolus I. Smith, a California state prisoner, appeals from the denial of his federal habeas corpus petition pursuant to 28 U.S.C. § 2254(a).

The California Court of Appeal affirmed Smith's convictions in a reasoned decision. Smith contests the district court's denial of his federal habeas corpus petition challenging the Court of Appeal's decision on four grounds: (1) the state trial court's denial of defense counsel's motion to disqualify Juror No. 6 violated the Sixth and Fourteenth Amendments because Juror No. 6 intentionally withheld material information during voir dire; (2) the introduction of extrinsic evidence by Juror No. 6 during jury deliberations violated the Sixth and Fourteenth Amendments; (3) irregularities that occurred when the state trial court accepted the verdict violated his right to a unanimous jury under California law and the federal Constitution; and (4) the state trial court violated his due process rights because its statements to the jurors coerced them to accept the verdict.

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253, and affirm the district court's order denying Smith habeas corpus relief.

I

The parties do not dispute the facts underlying Smith's convictions. The night of August 28, 2007, Smith menaced his wife with scissors, bound her feet and hands with the belt of a bathrobe, and threatened to kill her, while forcing her to

swallow numerous Benadryl, Advil, and ibuprofen pills. Eventually she lost consciousness. Although Smith insisted to emergency responders that his wife had attempted suicide, the truth emerged when she awoke in the hospital. And later, Smith apologized to his wife for what he had done in a phone conversation recorded by the authorities with authorization of a superior court judge.

On October 5, 2007, Smith was charged with attempted murder (Count I), false imprisonment with violence (Count II), corporal injury to a spouse (Count III), and criminal threats (Count IV). The information also alleged, as sentencing enhancements, that Smith inflicted great bodily injury in committing these crimes.[1]

During the voir dire examination of a new group of prospective jurors, which included Juror No. 6, a retired lieutenant from the New York Police Department, the court stated, "I'm going to assume all the newcomers have heard all the questions of all the people." The Judge then stated: "Anyone in that new batch who has any problem? Any kind of red flag goes up, or anything you think I should know or Mr. Smith should know about you, outside [of] the fact we have a retired lieutenant police department [officer]." Juror No. 6 did not respond. At around 3:17 p.m., defense counsel asked the prospective jurors if anyone had "read the paper about this particular case?" No one responded. In accepting the jury, and waiving further peremptory challenges, Smith's counsel stated: "I think this is going to surprise Juror No. 6. We have a jury. We'll accept this jury." A jury containing

---

[1] The sentencing enhancement allegations regarding Counts II and IV were stricken by the trial court in response to the prosecution's motion before the jury was instructed.

Juror No. 6 was selected before the jurors were excused for the day at 3:25 p.m.

The following morning, the court was informed by a member of the court's staff that Juror No. 6 knew the victim in this matter. In a session held in chambers, outside the presence of the other jurors, Juror No. 6 stated that he did not know Smith personally, but that his daughter and her husband lived about two to three doors away from Smith and his wife. He then asserted that they

> knew this gentleman as Smitty, as their neighbor. They've also had probably much more interest than me—I just got back from Florida. We have a place in Florida, and we have been there for two months. So been out of the loop. I've heard it said that there was a previous incident where he had been charged with a similar crime. What it was, and how it came about, and what the outcome was, I don't know. I said, "I don't want to hear it. I don't want to . . . hear it," because, you know, it could prejudice, of course, how you feel about an individual. Other than that, I said the only thing that the neighbors knew about him was that he was a charming man. You know, I had seen—I had seen him, but never really met him. I remember commenting, "Geez. There's a black actually living in his neighborhood." When we were first living there, Meyers was the redneck area which we found out it wasn't. It's a lovely place to live. Do we know him? Do we know people that

do know anybody?  I live on Mohican which
is about three blocks from his home.

The court asked Juror No. 6 if he knew anything about the
incident underlying the present charges.  Juror No. 6
responded:

No.  What do you hear?  You know, death by
Tylenol?  No.  I have never heard—probably,
I have read articles in the paper.  I do get the
*Tribune*.  I haven't gotten it since I got back
because we got back on Sunday.  We haven't
reviewed the paper yet.  I do subscribe to it
and usually did read it.  It didn't have a big
impact, like following a major case on it.

After Juror No. 6 made these remarks, defense counsel
stated that he was concerned "because of the mention of the
priors."  The court then asked Juror No. 6, "What did you
hear about the prior incident?"  Juror No. 6 responded that he
had heard a rumor from his daughter that "possibly [Smith]
had been charged previously with an attempted murder or
something."  The court then inquired whether Juror No. 6
could "separate that rumor that you heard about from your
judgment [in] this case."  Juror No. 6 replied:

You know, I can very easily because you were
throwing around cliches.  Basically, you can
indict a ham sandwich.  What it was, what it
was about, like I told my daughter, don't
say—whether or not they even know, I don't
know.  And, yeah, I mean, I have no real
leanings one way or another.  I mean, I
would—I can be fair.  You know?  I have

been through many court cases and know, you
know, a lot about the judicial system. But
that's basically, could I? Yes.

Defense counsel then moved to disqualify Juror No. 6.
He stated that he would "have exercised a peremptory" if he
had this information during the voir dire examination. In
denying the motion, the court stated: "I'm satisfied with
Juror No. 6's responses that he would do his best to be fair
and impartial in this case. He said he would. He said—from
his previous—they weren't actually contacts, but his previous
knowledge of Mr. Smith, he thought he was an okay guy."

Trial commenced later that day. It lasted six days. The
prosecution presented the testimony of nine witnesses,
including Smith's wife.

The jury began deliberating on December 19. On
December 21, the court received a note from the jury
foreperson which stated, "One juror went online and looked
up medications. Is it compromised?" The court sent a note
to the jury room asking the jury foreperson which juror had
allegedly engaged in any impermissible conduct. The jury
foreperson informed the court that it was Juror No. 6.

The court then questioned each of the jurors separately in
the presence of counsel and Smith. Juror No. 6 admitted that
he had read the labels on his wife's bottles of Tylenol and
ibuprofen the previous night, and that he had mentioned the
labels while the jurors were discussing Count I, the attempted
murder charge. In describing the labels to the other jurors, he
said that nothing on the labels suggested that Tylenol and
ibuprofen were lethal drugs since they caused only symptoms
like drowsiness and an upset stomach. He also encouraged

them to read the labels on the bottles that had been admitted into evidence. Juror No. 6 also informed the court that the jury foreperson told him, "[Y]ou're not supposed to do any research or anything outside of this room."

Juror No. 6 denied having conducted any research on the internet, explaining that "the Internet came in because I said, 'You *could* do . . . an Internet search and come up with all kinds of things on this stuff.'" Nine of the jurors, however, stated that he had informed them not only that he had looked at the labels, but that he had also gone online to research medications.

The jury foreperson informed the court that the jury had reached a verdict on Counts III and IV on the previous day, prior to Juror No. 6's revelation that he had conducted research regarding the effect of ingesting Tylenol and ibuprofen. The record shows that the trial court had been informed by the jury foreperson the previous day that the jury had reached a verdict on Counts III and IV. The court then informed counsel that it was going to accept the verdict on Counts III and IV, and declare a mistrial as to Counts I and II. Neither party objected to the court's proposal.

The jury verdict forms submitted by the jury foreperson indicated that the jury had found Smith guilty of Counts III and IV, but had not reached a decision on Counts I and II. The trial court noted that the jury's verdict regarding the sentencing enhancement allegation for Count I had been filled out, but not the one for Count III. The jury foreperson indicated that there was a mistake and modified the verdict form. When the court again reviewed the form, however, it discovered that the foreperson had again filled out the sentencing enhancement form for Count I, not Count III. The

court then instructed the jury foreperson as follows: "What I want you to do is mark down the decision . . . that was made yesterday, if it was made yesterday; date it today; sign it; and somewhere on there notate it that this vote or this decision was made on December 20, 2007." The jury foreperson revised the verdict form for the sentencing enhancement on Count III. As revised, it stated: "We the jury . . . find that the Defendant Konolus Smith did not inflict great bodily injury on the victim in the commission of the [crime] alleged on Count III, spousal abuse, dated 12-21-07."

The court then polled the jurors regarding their verdict on Counts III and IV. The following colloquy took place between the court and Juror No. 1:

> The Court: Juror No. 1, are these your verdicts and your special finding?
>
> Juror No. 1: For Counts III—
>
> The Court: There's a mistrial as to Counts I and II. I'm going to be asking all of you if these [are] your verdicts as to Count III, spousal battery; and Count IV, criminal threats; and whether it's your finding that great bodily injury was not inflicted. So Juror No. 1, are these your verdicts on the two counts and your special finding?
>
> Juror No. 1: No.
>
> The Court: No?

Juror No. 1:  Because the forms were signed wrong.  We had not come to a complete decision.

The Court:  As to what?

Juror No. 1:  Great bodily injury.

The Court:  I have a number of jurors who are nodding that that's—the jury hasn't reached a decision.  That would apparently explain the—

Juror No. 1:  Sir, we did the same thing on Count I.

The Court:  The problem with the findings—the situation is I cannot send you back in to deliberate on that because I'm going to discharge one of the jurors for misconduct.  And that means I have to bring in the alternate.  When I bring in the alternate, that means that you have to begin your deliberations from scratch.  If that causes you a problem, you can take that up with Juror No. 6 in a nonviolent manner.

Smith's counsel stated he would object to the court's proposal to discharge Juror No. 6 for misconduct and select an alternate juror so that the jury could determine whether it could reach a verdict on the sentencing enhancement alleged in Count III.  The trial court did not invoke the procedure it had contemplated.  Instead, it stated, "I'm going to go back,

I'm going to poll the jury as to Counts III and IV, period. And I will not discuss the special finding at this time."

The court then asked Juror No. 1, "[A]re these your verdicts as to Counts III and IV?" Juror No. 1 replied, "No." The court then stated: "The forms indicate that the jury has found Mr. Smith guilty of Count III, spousal abuse; guilty of Count IV, criminal threats. Juror No. 1, is this your verdict as to those two counts?" Juror No. 1 replied, "Yes, sir. It is."

When polled by the court, the remaining jurors indicated unanimously that they had found Smith guilty of the substantive crimes alleged in Counts III and IV. The court then asked the clerk to enter the verdicts of guilty for the substantive crimes alleged in Counts III and IV of the information, and to dismiss the sentence enhancement for Count III. Smith was sentenced to serve two indeterminate sentences of 25 years to life concurrently. He timely appealed the judgment.

## II

The California Court of Appeal affirmed the trial court's judgment on direct appeal. It first addressed Smith's challenges to Juror No. 6's failure to mention during voir dire that he had read about the case and that his daughter knew Smith. It concluded that the record supported the trial court's implied finding these omissions were not intentional. The Court of Appeal also credited the trial court's finding that Juror No. 6 could be fair and impartial because the trial court "was in the best position to make that determination." Regarding Smith's outside research during jury deliberations, it held that the research alone did not warrant a new trial

because Smith had effectively conceded that it "'was not inherently prejudicial.'"

The California Court of Appeal then turned to Smith's challenges to the trial court's taking of the jury's verdict on Counts III and IV. It rejected Smith's "claim that the verdicts were not 'entirely unanimous'" because "[t]he court correctly perceived that Juror No. 1 had not understood that, unlike the inquiry moments before, the court's present inquiry did not include the special allegation on count III," and "[w]hen the court clarified . . . , Juror No. 1 indicated that this was the jury's verdict." Lastly, the Court of Appeal addressed Smith's claim that the trial court coerced members of the jury by stating that it would discharge Juror No. 6, seat the alternate juror, and restart deliberations. The Court of Appeal held that the contention lacked merit because "it was only the count III special allegation that had not been resolved;" the jury had already reached a decision on Counts III and IV at the time these statements were made.

### III

The California Supreme Court summarily denied the petition for review. Smith, acting pro se, filed a § 2254(a) federal habeas corpus petition. He alleged that (1) the state trial court erred in denying his motion to discharge Juror No. 6 because that juror "had intentionally consealed [sic] material information during voir dire," (2) he was "entitled to a new trial because of deliberate jury misconduct that deprived him of his Federal Constitutional Right to a Jury Trial and due process," and (3) "several irregularities involving the taking of the jury verdicts by the trial court . . . deprived [him] of his Federal Constitutional Right to a jury trial and violated California Penal Codes § 1149 and § 1163."

The district court denied Smith's federal habeas corpus petition and declined Smith's request to issue a certificate of appealability.   A motions panel of this Court issued a certificate of appealability for two issues:  "(1) whether the trial court's refusal to dismiss Juror No. 6, for cause, violated appellant's constitutional right to a fair and impartial jury; and (2) whether any alleged juror misconduct during deliberations and/or irregularities in the trial court's acceptance of final verdicts resulted in constitutional violations."

IV

We review de novo the district court's denial of Smith's federal habeas corpus petition.  *Lemke v. Ryan*, 719 F.3d 1093, 1096 (9th Cir. 2013).  Because Smith filed his petition after April 24, 1996, the deferential standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern our review.  *Id.*  Under AEDPA, habeas relief can only be granted if the state court proceeding adjudicating the claim on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).

We review the California Court of Appeal's decision in this matter, as it is the "last reasoned state court decision" addressing his claims.  *Lemke*, 719 F.3d at 1096.

A

Smith claims that the state trial court should have discharged Juror No. 6 because he "engaged in a pattern of willful concealment and withholding of material information from the trial court and the attorneys" during voir dire. He asserts a violation of the Sixth and Fourteenth Amendments for "actual bias based upon a juror's untruthfulness on voir dire," and argues that the California Court of Appeal's rejection of this claim was contrary to *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

To obtain a new trial based on a juror's failure to disclose information during voir dire, a party must "first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause."[2] *McDonough Power Equip., Inc.*, 464 U.S. at 556. "The Supreme Court has held that an honest yet mistaken answer to a voir dire question rarely amounts to a constitutional violation; even an intentionally dishonest answer is not fatal, so long as the falsehood does not bespeak a lack of impartiality." *Dyer*, 151 F.3d at 973 (citing *McDonough Power Equip.*, 464 U.S. at 555–56).

"Whether a juror is dishonest is a question of fact." *Fields v. Brown*, 503 F.3d 755, 767 (9th Cir. 2007) (en banc)

---

[2] "The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." *Dyer v. Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc) (citing *United States v. Allsup*, 566 F.2d 68, 71 (9th Cir. 1977)). "[T]he presence of a biased juror introduces a structural defect not subject to harmless error analysis." *Id.* (citing *Arizona v. Fulminante*, 499 U.S. 279, 307–10 (1991)).

(citing *Dyer*, 151 F.3d at 973). The assessment of juror bias is "essentially one of credibility, and therefore largely one of demeanor." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984). "[T]he trial court's resolution of such questions is entitled . . . to 'special deference.'" *Id.* (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 500 (1984)).

During voir dire, the state trial court asked Juror No. 6 whether any "red flag goes up" or there was anything the parties should know. But no specific inquiries were made of Juror No. 6 as to his prior knowledge of Smith. Shortly before the jury was selected and dismissed for the evening, defense counsel asked Juror No. 6 if he had read about the case in the newspaper; Juror No. 6 remained silent.

The following morning, Juror No. 6 returned to the court and explained his failure to respond to these questions. He stated that he had not mentioned reading about the case in the newspaper because he had been out of town and had not read the paper for two months; anything he had read previously had not made a "big impact" on him. The state trial court found Juror No. 6's explanation for his failure to respond to the questions posed during voir dire was credible. It concluded that Juror No. 6 would act fairly and impartially. In its review of the record on appeal, the California Court of Appeal determined that the record demonstrated that Juror No. 6's omissions during voir dire were unintentional.

The state trial court concluded Juror No. 6 had credibly testified that he would be a fair and impartial juror. Nothing in the record suggests that this conclusion was unreasonable. Accordingly, the California Court of Appeal's decision was not "based on an unreasonable determination of the facts in

light of the evidence presented during the State court proceedings." 28 U.S.C. § 2254(d)(2).

B

Smith asserts that the California appellate court erred in rejecting his claim that Juror No. 6 also violated the Sixth and Fourteenth Amendments by examining the labels of his wife's medicine, conducting an internet search, lying about the internet search, and discussing his findings with the jury.[3]

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness

---

[3] Smith raises additional contentions with respect to Juror No. 6's actions during jury deliberations, none of which we can consider on appeal. First, he argues that Juror No. 6's actions demonstrate an implied bias, requiring reversal. We construe Smith's pro se habeas corpus petition liberally, as we must, *Woods v. Carey*, 525 F.3d 886, 889–90 (9th Cir. 2008), but conclude that it did not raise this issue. And, unsurprisingly, the district court did not address it in its decision. Because Smith did not preserve this claim, we cannot consider it. *See Tong Xiong v. Felker*, 681 F.3d 1067, 1075 (9th Cir. 2012) ("'Habeas claims not raised in the petition before the district court are not cognizable on appeal.'" (quoting *Belgarde v. Montana*, 123 F.3d 1210, 1216 (9th Cir. 1997))), *cert. denied*, 133 S. Ct. 989 (2013).

Second, Smith asserts that Juror No. 6 should have been removed for good cause under California Penal Code § 1089 when he violated the state trial court's instructions not to conduct any outside research. Because we only have jurisdiction under 28 U.S.C. § 2254(d)(1) to review violations of clearly established federal law on habeas corpus review, we cannot consider Smith's state law claim. *See Grotemeyer v. Hickman*, 393 F.3d 871, 877 (9th Cir. 2004) ("A federal court of appeals considering a petition for a writ of habeas corpus does not review state court decisions pursuant to state law like a state appellate court.").

stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965); *see also Estrada v. Scribner*, 512 F.3d 1227, 1238 (9th Cir. 2008) ("The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." (citing *Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997) (en banc), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc))). However, "[o]n collateral review, trial errors—such as extraneous information that was considered by the jury—are generally subject to a 'harmless error' analysis, namely, whether the error had 'substantial and injurious' effect or influence in determining the jury's verdict." *Estrada*, 512 F.3d at 1235 (quoting *Jeffries*, 114 F.3d at 1491); *see also Fields*, 503 F.3d at 781 (applying the harmless error standard under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), in reviewing juror misconduct claims); *Henry v. Ryan*, 720 F.3d 1073, 1085 (9th Cir. 2013) (same). Factors weighed by this Court in determining whether the introduction of extrinsic evidence was harmless under *Brecht* include:

> (1) whether the material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.

*Estrada*, 512 F.3d at 1238 (citing *Sassounian v. Roe*, 230 F.3d 1097, 1109 (9th Cir. 2000)). "While instructive, none of these factors should be considered dispositive." *Jeffries v. Blodgett*, 5 F.3d 1180, 1190 (9th Cir. 1993) (citing *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988)). We "apply the *Brecht* test without regard for the state court's harmlessness determination.'" *Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007)).

The record shows that the jury had already reached its verdict on whether Smith was guilty of the substantive offenses set forth in Counts III and IV prior to Juror No. 6's disclosure of extrinsic evidence to his fellow jurors. The state trial judge declared a mistrial as to Counts I and II because of Juror No. 6's misconduct and dismissed the sentencing enhancement in Count III. Accordingly, Juror No. 6's consideration of extrinsic evidence did not have a substantial and injurious effect or influence in determining the jury's verdict on Counts III and IV, in violation of the Sixth and Fourteenth Amendments.

## C

Smith also argues that his right to a unanimous jury under California Penal Code § 1163 and the federal Constitution was violated because the state trial court did not order the jury to resume its deliberations after Juror No. 1 stated during the polling of the jury that he did not vote to find Smith guilty of Counts III and IV, and that the California appellate court erred in holding to the contrary. We disagree. We are persuaded that the California Court of Appeal's determination that the jury verdict for the substantive crimes alleged in Counts III and IV was unanimous was not "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The record reflects that Juror No. 1 initially responded that the verdict signed by the foreperson did not reflect his vote because he understood that the trial court was asking not only about his acquiescence in the verdict for the substantive crimes alleged in Counts III and IV, but also the sentencing enhancement in Count III. The California Court of Appeal determined that "Juror No. 1 had not understood that, unlike the inquiry moments before, the court's present inquiry did not include the special allegation on count III." It concluded that after the trial court asked whether he voted Smith guilty of the substantive crimes set forth in Counts III and IV, Juror No. 1 stated that he had voted to find him guilty.

The record supports the California Court of Appeal's finding that the guilty jury verdict was unanimous on Counts III and IV. Accordingly, its decision was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4] 28 U.S.C. § 2254(d)(2).

## D

Lastly, Smith maintains that the trial court's suggestion in the presence of the jurors that if they had failed to reach a

---

[4] We also note that Smith failed to cite clearly established federal law to support his contention that a non-unanimous jury verdict would violate his constitutional rights. The Supreme Court has instructed that the Sixth and Fourteenth Amendments do not require a unanimous verdict in state criminal prosecutions. *Apodaca v. Oregon*, 406 U.S. 404, 407–12 (1972).

unanimous verdict on the sentencing enhancement allegation in Count III, it would be required to discharge Juror No. 6, seat an alternate, and order the jury to begin deliberations anew was coercive in violation of federal due process. The only Supreme Court case cited by Smith to support this argument is *Jenkins v. United States*, 380 U.S. 445 (1965) (per curiam). In *Jenkins*, the Supreme Court reversed the judgment in a federal criminal trial based on the trial judge's statement to the jury during deliberations that they had to reach a decision in the case. *Id.* at 446. However, the Supreme Court subsequently instructed that its discussion in *Jenkins* "was based on [its] supervisory power over the federal courts, and not on constitutional grounds." *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam). Because Smith has failed to state a due process claim in violation of clearly established federal law as determined by the Supreme Court, we cannot reach this issue on federal habeas corpus review. 28 U.S.C. § 2254(a).

## CONCLUSION

We affirm the district court's denial of Smith's federal habeas corpus petition. The California Court of Appeal's decision denying his appeal was not contrary to clearly established federal law and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1), (d)(2).

**AFFIRMED.**