**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

DARRYL LEE JAMES, JR.,
            *Defendant-Appellant.*

No. 07-10122

D.C. No.
CR-03-00900-MHM

OPINION

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
October 20, 2008—San Francisco, California

Filed February 26, 2009

Before: Procter Hug, Jr., Jane R. Roth,* and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

---

*The Honorable Jane R. Roth, Senior United States Circuit Judge for
the Third Circuit, sitting by designation.

2337

## COUNSEL

James Sun Park, Park Law Offices, PLC, Phoenix, Arizona, for the defendant-appellant.

Diane J. Humetewa, United States Attorney District of Arizona; Christina M. Cabanillas, Appellate Chief; and Vincent Q. Kirby (argued), Assistant United States Attorney, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

CLIFTON, Circuit Judge:

Defendant Darryl Lee James, Jr., was convicted of multiple criminal violations in a single trial. His appeal requires us to consider two separate subjects. One involves the process for adding new charges against a juvenile after the district court has already approved his prosecution as an adult on charges

previously filed against him. The other concerns the imposition of multiple convictions and sentences for single acts of misconduct.

James was 17 years old when he committed crimes for which he was tried and convicted as an adult. Prior to the trial, the district court held a hearing and determined James should be tried as an adult for the charges then outstanding against him. Other charges related to the same series of acts were added by the government after the juvenile transfer hearing and determination. James challenges these added charges, arguing that the Federal Juvenile Delinquency Act (FJDA) required that they also be the subject of a juvenile transfer hearing before he could be tried on them as an adult. We disagree and hold that the FJDA, and specifically 18 U.S.C. § 5032, does not require that charges added after a juvenile has been transferred to adult status be the subject of an additional juvenile transfer hearing.

James was convicted on separate counts of felony murder, second degree murder, and robbery, among other offenses. These three convictions resulted from a single homicide committed during a single robbery. In addition, James was convicted of three violations of 18 U.S.C. § 924(c) for using a gun in connection with each of these three crimes. James challenges the multiple convictions and the sentences imposed based on those convictions on the ground that they represent multiple punishments for the same offense in violation of the Double Jeopardy Clause. We agree, concluding that the convictions for second degree murder, robbery, and the two related gun violations must be vacated. In doing so, we conclude that a conviction for violating section 924(c) is authorized only if separate conviction and punishment for the underlying offense is consistent with double jeopardy.

## I.  Background

The crimes involved in this case were committed by James on the Navajo Indian Reservation in Arizona. His crime spree

began when James sexually abused two young girls, ages fourteen and three. The older girl escaped from James and ran to her house. James went to that house and, after knocking, fired a rifle shot through the locked front door, hitting and injuring her grandfather. James then stole a truck and made his way to a remote sheep camp where he encountered Juanita Begay and her mother. He shot and killed Juanita Begay and stole her mother's truck, which he used to flee Arizona. He was apprehended several days later.

The government initially charged James with first degree murder, use of a gun in the first degree murder, two counts of aggravated sexual abuse against a minor, and use of a gun in each of the two counts of aggravated sexual abuse against a minor. The government then moved to prosecute James as an adult.

Under the FJDA, a juvenile can be tried in federal court as an adult for specified offenses committed after the juvenile's fifteenth birthday if the court finds, after a hearing, that "such transfer would be in the interest of justice." 18 U.S.C. § 5032. The district court in this case conducted such a juvenile transfer hearing, found that transferring James to adult status was in the interest of justice, and granted the motion. The transfer order was affirmed by this court. *United States v. Juvenile Male*, 107 Fed. Appx. 743 (9th Cir. 2004).

After James was transferred to adult status, the government added additional charges against him: felony murder, use of a gun in the felony murder, robbery, use of a gun in the robbery, assault with a dangerous weapon, and use of a gun in the assault. All of the gun charges were brought under 18 U.S.C. § 924(c), which imposes a mandatory additional sentence for using a firearm during a crime of violence.

James moved to dismiss the indictment arguing, among other things, that the addition of the new charges violated the FJDA's requirements for transfer from juvenile to adult sta-

tus. The district court denied that motion. James sought an immediate appeal of that interlocutory decision, but the appeal was dismissed by this court for lack of jurisdiction. *United States v. J.*, 156 Fed. Appx. 18 (9th Cir. 2005).

James was tried by a jury and convicted of most, but not all, of the charges lodged against him. Specifically, he was convicted of felony murder, use of a gun in connection with the felony murder, robbery, use of a gun in connection with the robbery, two counts of aggravated sexual abuse of a minor, and the gun charge related to one of the two counts of sexual abuse of a minor. He was not convicted of the charged offense of first degree murder, but he was convicted of the lesser included offense of second degree murder, as well as use of a gun in connection with that offense. He was acquitted of the charge of assault with a dangerous weapon, the gun charge related to that alleged violation, and a gun count on one of the sexual abuse of a minor charges.

James was sentenced to life imprisonment for each of the felony murder, second degree murder, and two sexual abuse of a minor convictions, with the life sentences for felony murder and second degree murder to run concurrently with each other but consecutively to the life sentences for the two sexual abuse of a minor convictions. He was sentenced to a term of 180 months for the robbery conviction, to be served concurrently with the two life sentences for felony and second degree murder. He was sentenced to 300 months for using a gun in the felony murder, 300 months for using a gun in the second degree murder, and 300 months for using a gun in the robbery, to be served concurrently with each other but consecutively to all other sentences. Lastly, he received 300 months for using a gun in one of the sexual abuse of a minor convictions to be served consecutively to all other sentences.

## II. Discussion

James raises several issues, two of which warrant discussion here.[1]

### A. The Federal Juvenile Delinquency Act

James argues that the FJDA does not allow the trial of a juvenile as an adult on charges that have not been the subject of a transfer hearing. We review compliance with the requirements of the FJDA *de novo*. *United States v. D.L.*, 453 F.3d 1115, 1120 (9th Cir. 2006).

**[1]** Whether the FJDA requires every charge brought against a juvenile tried as an adult to be the subject of a juvenile transfer hearing appears to be an issue of first impression. We conclude that 18 U.S.C. § 5032 of the FJDA allows additional charges to be brought against a juvenile who has already been transferred to adult status without requiring another juvenile transfer hearing.

**[2]** We look first to the statutory language. Section 5032 of the FJDA, which sets forth the procedures for transferring a juvenile to adult status, also states:

---

[1]James's other challenges do not merit a lengthy discussion. First, the district court did not plainly err by admitting James's prior adjudications because a finding of intent for the priors can be inferred from the record, and the priors were alternatively admissible under Federal Rule of Evidence 404(b). *See United States v. Olano*, 507 U.S. 725, 734 (1993).

Second, the district court's remedial steps of requiring the government to put all of the information it learned from Violet Tsosie on the record, and ordering it not to use any of this information, were sufficient to protect James's right to counsel. *See United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980) (explaining that the right to counsel is only violated where the government uses wrongfully acquired information to gain an unfair advantage). Accordingly, the district court did not abuse its discretion by not holding an evidentiary hearing to determine whether the right had been violated. *See, e.g., United States v. Hagege*, 437 F.3d 943, 958-59 (9th Cir. 2006).

> Whenever a juvenile transferred to district court under this section is not convicted of the crime upon which the transfer was based *or another crime which would have warranted transfer had the juvenile been initially charged with that crime*, further proceedings concerning the juvenile shall be conducted pursuant to the provisions of this chapter.

18 U.S.C. § 5032 (emphasis added). This sentence describes two groups of crimes for which a juvenile may be convicted: "the crime upon which the transfer was based" and "another crime which would have warranted transfer." The first group covers those crimes that were the subject of a transfer hearing. The second group—those crimes that "would have warranted transfer"—presupposes that a minor may be convicted as an adult for an offense that had not been the subject of a transfer hearing. If every charge required a transfer hearing and determination, there would be no need for this second group because every crime would be one upon which "transfer was based."

The logic of the juvenile transfer process supports our reading of the statute. To determine if a transfer to adult prosecution is in the "interest of justice," the district court is required to consider and make findings as to six factors:

> the age and social background of the juvenile; the nature of the alleged offense; the extent and nature of the juvenile's prior delinquency record; the juvenile's present intellectual development and psychological maturity; the nature of past treatment efforts and the juvenile's response to such efforts; [and] the availability of programs designed to treat the juvenile's behavioral problems.

18 U.S.C. § 5032.

**[3]** Once the court has determined that a juvenile should be tried as an adult, requiring an additional hearing to determine

whether related charges added later meet the same standards would serve little purpose. It does not require a hearing to identify the newly added offenses or to ascertain the juvenile's age, both currently and at the time he allegedly committed the offenses. The remaining factors that the district court must consider primarily concern the individual characteristics of the juvenile himself rather than the details of the offenses, and those characteristics were already the subject of the first hearing. If the added charges arise from the same series of acts as the original charges, as they did here, the "interest of justice" analysis should remain unchanged.

Indeed, if additional charges had any effect, it would seem to be to tip the balance even further away from juvenile treatment. The decision to transfer a juvenile to adult status represents a determination that "the risk of harm" posed by that juvenile "outweighs the . . . chance for rehabilitation." *United States v. Juvenile*, 451 F.3d 571, 575 (9th Cir. 2006), *overruled on other grounds by United States v. Juvenile Male*, 245 Fed. Appx. 597 (9th Cir. 2007). It is implausible that a juvenile would be less of a threat or more amenable to rehabilitation because of additional charges.

In his appeal, James has challenged the process, but he has not presented a substantive argument that the counts subsequently added against him should not have been included within his adult prosecution. A new hearing on that subject by the district court would not have led to any different result.

**[4]** If there are reasons why charges added later should be dealt with separately and as part of a juvenile proceeding rather than being included within an adult prosecution, those reasons can be presented to the district court. The court could decide not to permit the juvenile to be tried as an adult on any or all of the added counts. But it would not make sense to require another juvenile transfer hearing when it would almost always produce an obvious result. The district court did not err by denying the motion to dismiss the charges added

against James on the ground that they had not been the subject of a juvenile transfer hearing.

## B. Double Jeopardy

James also challenges his convictions and sentences for felony murder, second degree murder, robbery, and the gun counts related to those offenses, on the ground that they represent multiple punishments for the same offense. We review the legality of James's convictions and sentences *de novo*. *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005).

The Fifth Amendment's guarantee against double jeopardy prohibits federal courts from imposing multiple punishments for the same offense if not authorized by Congress to do so. *Whalen v. United States*, 445 U.S. 684, 689 (1980); *see also Ball v. United States*, 470 U.S. 856, 861-65 (1985) (holding that if a jury returns a guilty verdict on multiple counts of the same offense the judge should only enter a final judgment of conviction on one of the offenses unless Congress clearly authorized multiple punishments); *United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) (same). We have previously stated that "a lesser included offense . . . is the 'same' for purposes of double jeopardy as any greater offense in which it inheres." *Jose*, 425 F.3d at 1241.

James was convicted and received a life sentence for committing felony murder, specifically murder while committing a robbery. He also was convicted and received a sentence of 180 months for robbery based on the same underlying robbery, and he was convicted and received another life sentence for second degree murder based on the same underlying murder.

[5] The government has conceded that, in this case, the second degree murder and robbery offenses are both lesser included offenses of the felony murder conviction and does

not argue that this is an instance where Congress has authorized multiple punishments for the same offense. While we have previously held that second degree murder is not a lesser included offense of felony murder, that was in the context of jury instructions. *United States v. Miguel*, 338 F.3d 995, 1004-06 (9th Cir. 2003); *United States v. Chischilly*, 30 F.3d 1144, 1159-60 (9th Cir. 1994). Here, where James has been convicted and sentenced separately for both felony murder and second degree murder for committing a single murder, we agree with the government's concession. *See Whalen*, 445 U.S. at 693 n.7 (explaining without disapproval that the appellate court vacated a sentence for second degree murder because it believed second degree murder was a lesser included offense of felony murder notwithstanding that the two were separate offenses under the prevailing case law); *accord Byrd v. United States*, 510 A.2d 1035, 1037 (D.C. App. 1986) (en banc) (concluding first-degree premeditated murder and first-degree felony murder are the same offense under the applicable D.C. statute, thereby precluding concurrent sentences for the convictions). James's convictions for second degree murder and for robbery should be vacated because of his conviction for the greater offense of felony murder. *Jose*, 425 F.3d at 1241, 1247-48. The district court imposed concurrent sentences for these convictions, so eliminating the additional convictions will likely not have any practical effect, but James cannot properly be convicted of two murders when there was only one victim.

In addition, James was convicted and sentenced for multiple violations of 18 U.S.C. § 924(c). The relevant portion of that statute reads: "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, . . . in addition to the punishment provided for such crime of violence" shall be punished for using or carrying a firearm. 18 U.S.C. § 924(c). James was sentenced to 300 months for using a gun in the felony murder, 300 months for using a gun in the second degree murder, and 300 months for using a gun

in the robbery, those sentences to be served concurrently with each other but consecutively to other sentences.

**[6]** We have never directly addressed whether section 924(c) permits multiple convictions where convictions for the underlying offenses would not be allowed. The statutory phrase in section 924(c) that reads, "in addition to the punishment provided for such crime of violence," presupposes that section 924(c) will only be applied where the defendant can be punished for the underlying offense. Accordingly, multiple convictions for violating section 924(c) are only authorized where separate punishments for the multiple predicate offenses are permitted by the Double Jeopardy Clause. This conclusion is consistent with decisions of other circuits addressing this issue. *See, e.g., United States v. Lindsay*, 985 F.2d 666, 667-77 (2d Cir. 1993); *United States v. Chalan*, 812 F.2d 1302, 1315-17 (10th Cir. 1987). It is also consistent with our previous decisions interpreting section 924(c). *See, e.g., United States v. Andrews*, 75 F.3d 552, 557-58 (9th Cir. 1996) (stating that "crimes occurring as part of the same underlying occurrence may constitute separate predicate offenses" supporting separate 924(c) convictions).

**[7]** Since we have concluded that the second degree murder and robbery convictions must be vacated in deference to the felony murder conviction, so too must the section 924(c) convictions tied to the second degree murder and robbery counts be vacated. We remand the second degree murder and robbery convictions and the associated section 924(c) convictions to the district court with instructions to vacate them without prejudice and to stay the entry of judgment and imposition of sentence, allowing each to be reinstated if the felony murder conviction and the section 924(c) conviction related to felony murder are later overturned. *See United States v. Davenport*, 519 F.3d 940, 948 (9th Cir. 2008).

### III.   Conclusion

The addition of charges after James was transferred to adult status was without error because 18 U.S.C. § 5032 did not

require that the additional charges be the subject of another juvenile transfer hearing. We hold, however, that punishing James for second degree murder, robbery, and their related gun counts, violates double jeopardy where he was also convicted and sentenced for felony murder and a related gun count for the same underlying act.

**AFFIRMED    IN    PART;    REVERSED    AND REMANDED IN PART.**