**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT D. LEMKE,
            *Petitioner-Appellant*,

v.

CHARLES L. RYAN and ATTORNEY
GENERAL OF THE STATE OF
ARIZONA,
            *Respondents-Appellees*.

No. 11-15960

D.C. No.
2:09-cv-01059-
DGC

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
March 6, 2013—Tucson, Arizona

Filed June 19, 2013

Before: William C. Canby, Jr. and N. Randy Smith,
Circuit Judges, and Larry A. Burns, District Judge.[*]

Opinion by Judge Canby;
Partial Concurrence and Partial Dissent by Judge Burns

---

[*] The Honorable Larry A. Burns, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition based on the Double Jeopardy Clause.

Petitioner was charged with armed robbery, felony murder predicated on armed robbery, and conspiracy to commit armed robbery. The jury returned guilty verdicts on the lesser included offenses of theft and conspiracy to commit theft, but was unable to reach a verdict on the felony murder charge. After unsuccessfully opposing his retrial on the remaining charge, petitioner pleaded guilty in exchange for a concurrent sentence.

The panel first held that petitioner did not waive his Double Jeopardy claim merely by entering a guilty plea, and was not convinced that he waived it in the broad waiver clause of his plea agreement.

The panel next determined that the prosecution of petitioner for armed robbery felony murder after his implied acquittal of armed robbery was a prosecution for the "same offense," but was not a "successive" prosecution for Double Jeopardy purposes because original jeopardy had not terminated for the count for which the jury failed to reach a verdict. Consequently, the state court's rejection of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law.

The panel also held that retrial was not barred by the collateral estoppel doctrine, because petitioner had not demonstrated that the jury "necessarily decided" that he had not committed armed robbery when it failed to return a verdict on that count.

District Judge Burns concurred in part and dissented in part. He did not agree that petitioner could pursue his Double Jeopardy claim after signing the plea agreement, but he agreed that the state court's rejection of that claim was neither contrary to nor an unreasonable application of clearly established federal law.

## COUNSEL

Golnoosh Farzaneh (argued), Assistant Federal Public Defender, and Keith J. Hilzendeger, Research & Writing Specialist, Federal Public Defenders' Office, Phoenix, Arizona, for Petitioner-Appellant.

Jeffrey L. Sparks (argued), Assistant Attorney General; Kent E. Cattani, Division Chief Counsel; Joseph T. Maziarz, Section Chief Counsel, Phoenix, Arizona, for Respondents-Appellees.

## OPINION

CANBY, Senior Circuit Judge:

Petitioner Robert D. Lemke appeals the district court's denial of his petition for a writ of habeas corpus brought under 28 U.S.C. § 2254. Lemke contends that subjecting him to retrial for felony murder violated the Double Jeopardy Clause because a jury earlier had impliedly acquitted him of the robbery underlying the felony murder charge. We conclude that the Arizona Court of Appeals' holding that double jeopardy did not bar Lemke's retrial was not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, we affirm.

## BACKGROUND

In August 2002, Charles Chance was robbed and shot once in the chest. He died at the scene. Petitioner was then indicted in Arizona state court on three counts stemming from that incident: (1) felony murder predicated on armed robbery; (2) armed robbery; and (3) conspiracy to commit armed robbery.

At trial, the court instructed the jury that the armed robbery charge in Count II included the lesser offense of theft and, similarly, that the charge of conspiracy to commit armed robbery in Count III included the lesser charge of conspiracy to commit theft. In accordance with Arizona law, the trial court also provided a *LeBlanc* instruction, which allowed the jurors to consider a lesser included offense if, after reasonable effort, they could not agree on the greater charged offense.

*State v. LeBlanc*, 924 P.2d 441, 442 (Ariz. 1996).  The jury was not instructed on any lesser included offense for Count I, felony murder.

After seven days of deliberation, the jury returned guilty verdicts on the lesser included offenses of theft and conspiracy to commit theft.  The jury left blank the verdict forms for armed robbery and conspiracy to commit armed robbery.  As to felony murder predicated on armed robbery, the jury reported that it could not reach a verdict.  The court declared a mistrial on the felony murder count and sentenced Lemke to a total of twenty-seven years' imprisonment for the theft and conspiracy convictions.

The State then sought retrial on the felony murder count. Lemke moved for dismissal, arguing that double jeopardy barred his retrial for felony murder predicated on armed robbery.  The trial court denied Lemke's motion, the Arizona Court of Appeals rejected Lemke's double jeopardy claim in a reasoned decision, and the Arizona Supreme Court denied review.  Thereafter, Lemke pleaded guilty to felony murder in exchange for a concurrent life sentence with the possibility of parole after 25 years.

Lemke then filed a pro se 28 U.S.C. § 2254 petition in federal district court, reasserting his argument that the Double Jeopardy Clause barred his retrial for felony murder.  The district court denied the petition and declined to issue a certificate of appealability.  Lemke appealed, and this court granted a certificate of appealability and appointed counsel.

## DISCUSSION

We review de novo the district court's denial of a habeas petition. *Ferrizz v. Giurbino*, 432 F.3d 990, 992 (9th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), we may grant Lemke's petition for habeas relief only if the decision of the Arizona Court of Appeals "was contrary to federal law then clearly established in the holdings of [the Supreme] Court; or . . . involved an unreasonable application of such law." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (internal quotation marks and citations omitted). Because the Arizona Supreme Court denied review in a summary order, we look through that order to the last reasoned state court decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991).

## A. Waiver

As an initial matter, we address two issues of waiver. The first is whether Lemke's express waiver of appeal in his plea agreement also waived his right to bring this petition for collateral relief. The government does not argue that Lemke's express waiver of appeal waived his right to bring a collateral attack under 28 U.S.C. § 2254, but the partial dissent here does. Our circuit precedent makes clear, however, that a waiver of collateral attack must be express, and that a plain waiver of appeal does not suffice. *See United States v. Benboe*, 157 F.3d 1181, 1183 (9th Cir. 1998) ("We have held that even where a plea agreement specifies that no appeal will be taken, it does not waive the right to bring a § 2255 motion unless it does so expressly."); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ("A plea agreement does not waive the right to bring a § 2255 motion unless it does so expressly.").

Lemke's plea agreement does not expressly waive his right of collateral attack.  His plea agreement states:

> [T]he Defendant hereby waives and gives up any and all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him and the imposition of a sentence upon him consistent with this agreement.  By entering this agreement, the Defendant further waives and gives up the right to appeal.

This provision does not mention collateral attack, and its wording is most reasonably read as referring to post-trial activity in the trial court, an interpretation that is bolstered by the addition of a separate sentence waiving Lemke's right of appeal.  Lemke's § 2254 petition is not such a contemplated "motion[], defense[], objection[], or request[]."  Indeed, the advice given by the trial judge at the change of plea hearing makes clear that Lemke was not waiving his right of collateral attack in the state court.  After informing Lemke that he was waiving his right of appeal, the judge stated:

> Under the plea agreement, you have to file what is called a petition for post-conviction relief where if there were any mistakes by your attorneys, by the State, by the Courts or any other irregularity that requires redress with the Courts, you have to file that petition in writing with the sentencing judge within 90 days of your sentence or you might lose that right.

It seems apparent, therefore, that neither the plea agreement nor Lemke's likely understanding of it waived his right to bring this collateral action under § 2254.

The second waiver issue is whether Lemke, by his plea or in the quoted portion of his plea agreement, waived his claim of double jeopardy as a substantive matter. Because the state courts did not consider this issue, our review is de novo. *See Scott v. Schriro*, 567 F.3d 573, 584–85 (9th Cir. 2009) (noting that AEDPA deference does not apply when "there is no state court decision on this issue to which to accord deference" (internal quotation marks and citation omitted)).

The general rule is that "'a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *United States v. Broce*, 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). This rule is predicated on the idea that a valid guilty plea "removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975). Accordingly, Lemke's guilty plea to felony murder waived constitutional claims that became irrelevant upon reliable establishment of factual guilt by his plea. *Id*.

An exception to this general rule, however, is that a defendant's "guilty plea does not foreclose a subsequent challenge where the defendant challenges the right not to be haled into court at all." *Broce*, 488 U.S. at 574–75 (internal quotation marks omitted). Lemke's plea fits into this narrow exception where he argues that the charge to which he pleaded guilty is one "which the State may not constitutionally prosecute," *id.* at 575 (internal quotation marks and citation omitted), and where his claim does not

rely on evidence outside the "indictments and the existing record," *id.* at 576. In arguing that his retrial for felony murder violated double jeopardy, Lemke does not challenge his factual guilt, but instead asserts that the State was constitutionally barred from prosecuting him for felony murder. *See United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1006 (9th Cir. 2000) ("The Court in *Menna* drew a fundamental distinction between post-plea constitutional challenges that implicated the factual guilt of the defendant, and those that were independent of factual guilt."). Moreover, as previously mentioned, Lemke relies only on the existing record and does not "seek further proceedings at which to expand the record with new evidence." *Broce*, 488 U.S. at 575. We may resolve Lemke's claim solely by reviewing the face of the indictment, the guilty plea, and the judgments entered against Lemke "without any need to venture beyond [the existing] record." *Id.* Thus, Lemke's double jeopardy claim is not waived merely by his entry of a plea of guilty.

A more difficult issue is whether Lemke waived his double jeopardy defense entirely in the clause of the plea agreement in which Lemke waives "all motions, defenses, objections, or requests which he has made or raised, or could assert hereafter, to the court's entry of judgment against him." Although this language is broad, it does not refer specifically to double jeopardy or any other particular subject matter. And for reasons that we have explained, the waiver appears to be limited to matters arising in the trial court apart from any collateral attack. We construe any ambiguity in a plea agreement against the drafter – here, the State. *See United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006). Lemke's claim of double jeopardy raised by this appeal thus may not fall within the "literal terms" of his plea

agreement waiver. *United States v. Leniear*, 574 F.3d 668, 672 (9th Cir. 2009) (internal quotation marks and citation omitted).

In arguing that Lemke's double jeopardy claim is waived, the partial dissent here relies on *Ricketts v. Adamson*, 483 U.S. 1 (1987). In that case, Adamson had entered a plea of guilty to second-degree murder that required him to testify against his co-conspirators. The agreement provided that "[s]hould the defendant refuse to testify . . . then this entire agreement is null and void and the original charge [of first-degree murder] will be automatically reinstated." *Id.* at 4. It further specified that "[i]n the event that this agreement becomes null and void, then the parties shall be returned to the positions they were in before this agreement." *Id.* at 9.

Adamson testified and was sentenced for second-degree murder pursuant to the agreement. The convictions of his co-conspirators were reversed on appeal, however, and Adamson refused to testify against them at their retrial. The court then vacated his conviction and reinstated the first-degree murder charge. Adamson was convicted and sentenced to death. The Supreme Court upheld the conviction, rejecting Adamson's double jeopardy claim. The Court stated:

> The terms of the agreement could not be clearer: In the event of respondent's breach occasioned by a refusal to testify, the parties would be returned to the *status quo ante*, in which case respondent would have *no* double jeopardy defense to waive. And, an agreement specifying that charges may be *reinstated* given certain circumstances is, at least under the provisions of this plea

agreement, *precisely* equivalent to an agreement waiving a double jeopardy defense.

*Id.* at 10 (emphasis in original).

*Adamson* certainly stands for the proposition that a double jeopardy defense *can* be waived, but it is sufficiently distinguishable so that it does not necessarily compel a conclusion that Lemke has waived his double jeopardy claim. Adamson's waiver was specific to his situation and spelled out exactly what would happen to him if he refused to testify. Lemke's waiver was not similarly specific, and his underlying prior adjudication was not vacated because of a breach of a plea agreement or for any other reason.

We are not convinced, therefore, that *Adamson* or any other authority supports a conclusion that Lemke has waived his double jeopardy defense. We need not resolve this question definitively, however, because we conclude, for the reasons that follow, that Lemke's double jeopardy claim fails on its merits to meet the requirements of § 2254(d)(1). The contention that he waived that claim is not a jurisdictional issue, and there is no compelling reason why we cannot proceed to the merits of his appeal without conclusively resolving the waiver issue. *See United States v. Jacobo Castillo*, 496 F.3d 947, 954–57 (9th Cir. 2007) (en banc) (holding that a plea agreement waiver of appeal does not deprive appellate court of statutory jurisdiction).

## B.  Double Jeopardy

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The claim

preclusion aspect of the Double Jeopardy Clause bars successive prosecutions for charges that are, for double jeopardy purposes, the same offense. *United States v. Dixon*, 509 U.S. 688, 696–98 (1993). The issue preclusion, or collateral estoppel, aspect of double jeopardy "precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States*, 557 U.S. 110, 119 (2009).

The Arizona Court of Appeals held that neither aspect of double jeopardy barred Lemke's retrial for felony murder. *Lemke v. Rayes*, 141 P.3d 407, 416 (Ariz. Ct. App. 2006). We now consider whether that conclusion constituted an unreasonable application of clearly established Supreme Court precedent, and we hold that it did not.

### 1. Double Jeopardy Claim Preclusion

The Supreme Court has held that the Double Jeopardy Clause "protects against successive prosecutions for the same offense after acquittal or conviction." *Monge v. California*, 524 U.S. 721, 727–28 (1998). We conclude that, under this formulation and others put forth by the Supreme Court, the prosecution of Lemke for armed robbery felony murder after his implied acquittal of armed robbery was indeed prosecution for the "same offense." Supreme Court precedent, however, does not clearly establish that, under the circumstances of his case, the continued prosecution was "successive" and therefore prohibited.

### a. The "Same Offense" test

Two charges constitute the "same offense" for double jeopardy purposes unless "each provision requires proof of a

fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The State admits, and the Arizona Court of Appeals held, that armed robbery and felony murder predicated on armed robbery are the "same offense" under the *Blockburger* test because the felony murder includes all of the elements of armed robbery. *See, e.g.*, *Harris v. Oklahoma*, 433 U.S. 682, 682–83 (1977) (holding that, for double jeopardy purposes, robbery with a firearm is the same offense as felony murder predicated on armed robbery); *Whalen v. United States*, 445 U.S. 684, 693–94 (1980) (noting that rape is a "lesser included" offense of felony murder predicated on rape and is the same offense for double jeopardy purposes); *United States v. James*, 556 F.3d 1062, 1067 (9th Cir. 2009) (analyzing an Arizona state conviction and accepting that robbery is a lesser included offense of felony murder).[1]

The Arizona Court of Appeals also assumed that, by convicting Lemke of theft and remaining silent as to the charge of armed robbery, the jury impliedly acquitted Lemke of armed robbery. *See Green v. United States*, 355 U.S. 184, 190–91 (1957) (holding that when a jury convicts a defendant on a lesser included charge and remains silent as to the greater inclusive charge, it impliedly acquits the defendant of the greater charge); *see also Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) ("An implied acquittal occurs when a jury returns a guilty verdict as to a lesser included or lesser alternate charge, but remains silent as to other charges,

---

[1] Moreover, because theft is a lesser included offense of robbery, theft and felony murder predicated on robbery are also the "same offense" for double jeopardy purposes.

without announcing any signs of hopeless deadlock.").**[2]**  The Arizona Court of Appeals was thus confronted with a situation in which the jury had convicted the defendant of theft, impliedly acquitted him of armed robbery, and deadlocked on felony murder, and all three of those charges constituted the "same offense" for double jeopardy purposes.

Lemke argues that, once the Arizona Court of Appeals reached this point in its analysis, *Blockburger* compelled the court to hold that double jeopardy barred his retrial for felony murder.  His argument is attractively simple.  Under *Blockburger*, the offenses for which he was convicted (theft) and impliedly acquitted (armed robbery) are the "same offense" as felony murder.  Accordingly, the State could not place him twice in jeopardy for the "same offense" by retrying him on the felony murder charge.

The Arizona Court of Appeals, however, did not follow the straightforward approach that Lemke advocates.  Citing *Richardson v. United States*, 468 U.S. 317, 325 (1984), the court noted that the protections afforded by the Double Jeopardy Clause apply only after original jeopardy has terminated, and jeopardy "continues" on counts for which the jury has failed to reach a verdict.  *Lemke*, 141 P.3d at 414.

---

**[2]** The trial court's provision of a *LeBlanc* instruction, which allowed jurors to consider the lesser offense if they could not agree as to the greater offense, likely does not undermine the conclusion that the jury's silence on armed robbery constituted an implied acquittal.  *See Brazzel*, 491 F.3d at 979 (treating the situation as an implied acquittal where the jurors left blank the verdict form for the greater offense and convicted on the lesser offense, even though the jury instructions included an "unable to agree" instruction and provided that the jurors "must" fill out the verdict form if they unanimously agreed and were to leave it blank if they could not agree).

The Arizona Court of Appeals therefore held that, although jeopardy had terminated as to the armed robbery count of the indictment, it had never terminated as to the felony murder count. *Id.* at 415. Thus, retrial for felony murder would not expose Lemke to a *successive* prosecution or place him "*twice* in jeopardy." *Id.*

### b. "Successive" prosecution

We cannot conclude that Supreme Court precedent forecloses the result reached by the Arizona Court of Appeals. Neither of the Supreme Court cases that Lemke principally relies upon conclusively addresses his situation. In *Green v. United States*, 355 U.S. 184 (1957), the defendant was charged with arson and first degree murder by arson. The jury found him guilty of arson and second degree murder. On appeal, his second degree murder conviction was reversed and his case was remanded for retrial. On remand he was tried and convicted of first degree murder. The Supreme Court held that the first degree murder conviction was barred by the Double Jeopardy Clause because the first jury implicitly acquitted him of that charge, and that jury had been dismissed without Green's consent, thus ending his jeopardy on that charge. *Id.* at 190–91; *accord*, *Price v. Georgia*, 398 U.S. 323, 329 (1970). *Green* is close to Lemke's case, but differs in that Lemke was not retried on the same charge of which the jury had implicitly acquitted him, and no event necessarily terminated his jeopardy on the hung-jury charge of felony murder predicated on armed robbery.

In *Brown v. Ohio*, 432 U.S. 161 (1977), the defendant had been convicted of joyriding. He was later indicted and convicted of auto theft arising from the same incident. The Supreme Court held that the second conviction was barred by

the Double Jeopardy Clause, but it is abundantly clear that the separate, second prosecution was "successive" within the meaning of the Double Jeopardy Clause.

On the other hand, the Supreme Court in *Richardson v. United States*, 468 U.S. at 325, permitted retrial of charges on which a jury had been unable to agree, despite the defendant's argument that the evidence in his first trial had been insufficient to convict him. In rejecting that argument, the Court held that "the failure of the jury to reach a verdict is not an event which terminates jeopardy." *Id.* And in *Ohio v. Johnson*, 467 U.S. 493 (1984), the Supreme Court held that the defendant's plea of guilty to lesser included offenses did not foreclose an ensuing trial on the greater offense, noting that the defendant's "efforts were directed to separate disposition of counts in the same indictment where no more than one trial of the offenses charged was ever contemplated." *Id.* at 502. Finally, in *Blueford v. Arkansas*, 132 S. Ct. 2044, 2050–51 (2012), the Supreme Court permitted retrial of capital charges after a jury was unable to reach a verdict, even though the jury had reported itself as unanimously against conviction on the capital charge; no verdict had actually been entered.

Although none of these cases perfectly matches Lemke's case, and although *Green* is perhaps the closest case to Lemke's, the mix of these Supreme Court cases does not leave us with an impression that law clearly established by the Supreme Court precluded Lemke's being subjected to retrial for felony murder – a charge of which he had not been acquitted explicitly or implicitly. We have not been directed to any Supreme Court decision that forecloses as a matter of claim preclusion the retrial, in the same litigation, of a charge

upon which the record shows that the jury was unable to come to a verdict.

Although the clearly established federal law required by § 2254(d)(1) must be found in Supreme Court, not circuit court, decisions, we may examine our own precedent to see whether we are bound by one of our decisions that "has already held that the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013). Such an examination leads to somewhat contradictory results in this case.

*Wilson v. Czerniak*, 355 F.3d 1151 (9th Cir. 2004), provides strong support for Lemke's position. There, the petitioner had been indicted on a variety of charges, including aggravated felony murder predicated on kidnapping, intentional murder, and kidnapping. *Id.* at 1152. Felony murder and intentional murder were charged in separate counts. *Id.* at 1152. The jury convicted the petitioner of kidnapping, acquitted him of intentional murder, and hung on the aggravated felony murder charges. *Id.* We held that the petitioner could not be retried for felony murder because he had been acquitted of intentional murder, which, under *Blockburger*, was the "same offense" as felony murder. In so holding, we noted that "[w]ell-settled Supreme Court precedent provides that a criminal defendant may not be retried for a crime following an acquittal or conviction on a lesser included or greater inclusive offense." *Id.* at 1154. Even though jeopardy had not terminated as to the hung felony murder count, it had terminated as to the intentional murder count, and intentional murder was a lesser included offense of felony murder. *Id.* at 1155. Accordingly, "a retrial for aggravated felony murder would subject Wilson twice to jeopardy for the same offense." *Id.* at 1156. Moreover, we

distinguished *Richardson* on the ground that it involved "separate and unrelated offenses and raised no *Blockburger* issue." *Id.* at 1155. Finally, we held that the state court had unreasonably applied Supreme Court precedent in reaching the contrary conclusion. *Id.* at 1156–57.

*Wilson* presents a very close factual situation to this case, but it is not precisely on point. Unlike the petitioner in *Wilson*, Lemke was acquitted of a lesser-included charge (armed robbery) only by implication arising from his conviction of a sub-lesser-included charge (theft). Yet this distinction is not really material for claim preclusion purposes; double jeopardy may be shown by either a prior acquittal or a prior conviction of the same offense. *Id.* at 1154. Moreover, all parties have accepted for purposes of decision that Lemke's implied acquittal for armed robbery was effective, and that the State could not retry him for armed robbery.

Thus, were we faced only with the applicable Supreme Court precedent and our interpretation of that precedent in *Wilson*, we would likely consider ourselves bound by circuit law to conclude that clearly established federal law as determined by the Supreme Court barred Lemke's retrial for felony murder. But other cases decided by our circuit before and after *Wilson* present insurmountable obstacles in the way of such a conclusion.

In *Forsberg v. United States*, 351 F.2d 242 (9th Cir. 1965), decided well before *Wilson*, the jury hung on a lesser included offense and acquitted on a greater inclusive offense charged in the same indictment. Relying on the fact that the two charges were brought in the same indictment, we held that the termination of jeopardy as to the greater inclusive

offense did not bar retrial as to the lesser included offense. *Id.* at 248.

A year after our decision in *Wilson*, and largely contradictory to it, we decided *United States v. Jose*, 425 F.3d 1237 (9th Cir. 2005). There, the defendants were initially convicted of felony murder and lesser included robbery and burglary charges, but their felony murder convictions were reversed on appeal. *Id.* at 1239–40. Relying heavily on *Forsberg* and without mentioning *Wilson*, we held that "final convictions on the underlying predicate felonies do not trigger double jeopardy protections against retrial of the greater offense originally charged under the *same* indictment in the *same* trial." *Id.* at 1248 (emphasis in original). We noted that "'there is a difference between separate, successive trials of greater and lesser offenses, and the different situation in which both are tried together.'" *Id.* at 1242 (quoting *United States v. DeVincent*, 632 F.2d 155, 158 (1st Cir. 1980)). We concluded that, "[i]n such a situation, the government is not barred from retrying the defendant, notwithstanding that jeopardy has terminated on the related offense. And this is true even though the greater and lesser offenses are the 'same offense' for purposes of double jeopardy." *Id.* at 1243–44 (internal citations omitted). We rejected the defendants' reliance on *Green*, noting that "[t]heir theory would have made it impossible for the district court to retry Green on the charge of second degree murder even though this was the charge that formed the basis of his reversed conviction." *Id.* at 1245 (footnote omitted).[3]

---

[3] This observation regarding *Green* is problematical in light of *Green*'s unusual procedural posture. Green had obtained reversal of his second-degree murder conviction on the ground that the jury should not have been instructed on second-degree murder, so that it was possible that, without

Accordingly, we held that retrial did not violate double jeopardy.[4]

It is almost impossible to reconcile *Wilson* and *Jose* and satisfy our quest for binding circuit authority on whether Lemke's subjection to retrial for felony murder violated clearly established federal law as determined by the Supreme Court. The conflict between *Wilson* and *Jose* is sufficiently severe that, if we were dealing with a direct appeal, we would probably suggest en banc review to determine which case provides the circuit law to govern the appeal of the double jeopardy claim. This is not a direct appeal, however, and our ultimate task is to determine whether Supreme Court precedent clearly establishes federal law in Lemke's favor. All we can say in the face of *Wilson* and *Jose* is that our circuit law provides no binding answer on that point. Because our direct examination of Supreme Court precedent

the instruction, he would have been acquitted of murder entirely. The court of appeals agreed that the evidence pointed "to murder in the first degree and nothing else," and that the second-degree murder instruction had been "at least technically erroneous." *Green v. United States*, 218 F.2d 856, 859 (D.C. Cir. 1955). It seems likely, therefore, that Green could not have been retried for second-degree murder on remand. Our larger point in *Jose*, however, was that ordinarily a defendant who succeeds in overturning a conviction on appeal can be retried. *See United States v. Tateo*, 377 U.S. 463, 465 n.1 (1964) ("[*Green*] holds only that when one is convicted of a lesser offense included in that charged in the original indictment, he can be retried only for the offense of which he was convicted rather than that with which he was originally charged."). Moreover, even if *Jose* misinterpreted *Green*, its decision remains as the potential law of the circuit regarding *Green*'s effect.

[4] The Arizona Court of Appeals cited *Jose* in support its conclusion that jeopardy continued on Lemke's felony murder charge even after it terminated on the robbery charge. *Lemke*, 141 P.3d at 415.

reveals no clearly established law precluding Lemke's retrial for felony murder, we reject his double jeopardy claim preclusion argument.

Case law from our sister circuits that conflicts with *Wilson* also buttresses our conclusion that Lemke's double jeopardy claim is not founded on clearly established Supreme Court law. *See Carey v. Musladin*, 549 U.S. 70, 76 (2006) (noting that divergent treatment of an issue among circuit courts "reflect[ed] the lack of guidance" from the Supreme Court); *Meras v. Sisto*, 676 F.3d 1184, 1190 (9th Cir. 2012) (noting that extensive disagreement among lower courts may suggest that a state court did not unreasonably apply clearly established federal law). Several decisions from other circuits suggest that double jeopardy does not necessarily bar retrial on a hung count after jeopardy has terminated on a lesser included or greater inclusive offense charged in the same indictment. *See, e.g.*, *United States v. Jackson*, 658 F.3d 145, 151–53 (2d Cir. 2011) (finding no double jeopardy violation where defendant had been convicted of lesser included offense and retried on deadlocked greater offense, but suggesting that collateral estoppel might have barred retrial had defendant been acquitted, rather than convicted, of lesser offense); *Delgado v. Fla. Dep't of Corrections*, 659 F.3d 1311, 1330 (11th Cir. 2011) (citing *Jose* with approval and noting that jeopardy can continue on one charge even after it terminates on a lesser or greater offense charged in the same indictment); *United States v. Howe*, 538 F.3d 820, 827 (8th Cir. 2008) (holding that, when a jury acquits a defendant of a greater offense and deadlocks as to a lesser offense, "jeopardy continues as to the lesser offense, notwithstanding the defendant's acquittal on the greater offense"), *abrogated on other grounds by Yeager v. United States*, 557 U.S. 110 (2009). These cases cast doubt

on the proposition that Supreme Court precedent clearly establishes that double jeopardy bars retrial on a deadlocked count once jeopardy has terminated on another count in the indictment that constitutes the "same offense."

We conclude, therefore, that Lemke has failed to meet the requirement of 28 U.S.C. § 2254(d)(1) that the decision of the Arizona Court of Appeals rejecting double jeopardy claim preclusion "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

### 2. Collateral Estoppel

We also conclude that the Arizona Court of Appeals did not unreasonably apply clearly established federal law in holding that collateral estoppel did not bar Lemke's retrial for felony murder.  Collateral estoppel would apply if Lemke's retrial for felony murder would involve "relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager*, 557 U.S. at 119.  In deciding whether an issue was "necessarily decided" by the jury, the court must "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (internal quotation marks and footnote omitted).

The Arizona Court of Appeals reasonably concluded that Petitioner could not carry his burden of demonstrating that the jury "necessarily decided" that he had not committed armed robbery.  The court noted that "[t]he *LeBlanc*

instruction prevents us from knowing whether the jury unanimously acquitted defendant of armed robbery or simply could not agree." *Lemke*, 141 P.3d at 416. Although the jury's silence on armed robbery constituted an implied acquittal of that charge for the purposes of the claim preclusion aspect of double jeopardy, it does not have an issue preclusive effect unless the record indicates that the jury necessarily decided the issue in Lemke's favor. *See Schiro v. Farley*, 510 U.S. 222, 236 (1994) ("We have in some circumstances considered jury silence as tantamount to an acquittal for double jeopardy purposes. *Green v. United States*, 355 U.S. 184, 190-191 . . . ; *Price v. Georgia*, 398 U.S., at 329, 90 S. Ct., at 1761. The failure to return a verdict does not have collateral estoppel effect, however, unless the record establishes that the issue was actually and necessarily decided in the defendant's favor."); *see also United States v. Carothers*, 630 F.3d 959, 964–65 (9th Cir. 2011) (holding that the trial court's improper mistrial on simple possession barred retrial for that charge under double jeopardy but carried no issue-preclusive effect with respect to retrial for a greater inclusive charge). Here, the record did not establish that the jury had necessarily decided that Lemke did not commit armed robbery.

## CONCLUSION

The judgment of the district court is

**AFFIRMED.**

BURNS, District Judge, concurring in part and dissenting in part:

I agree that the decision of the Arizona Court of Appeals rejecting Lemke's double jeopardy claim was not contrary to, or an unreasonable application of, clearly established Federal law. I don't agree, though, that Lemke still had a double jeopardy claim left after he pled guilty to felony murder. Lemke signed a plea agreement in which he bargained away his right to pursue "any and all motions, defenses, objections or requests which he [had] made or raised, or could assert hereafter, to the court's entry of judgment against him." But after he got what he bargained for — namely, a favorable sentence — he reneged on his promise to drop his defenses and appeals. We shouldn't let him get away with such perfidy.

The panel majority holds as a threshold matter that under *Menna v. New York*, 423 U.S. 61, 62 (1975), a double jeopardy claim is not impliedly waived by a defendant's open guilty plea, provided the defendant is not challenging his factual guilt and his claim can be resolved without considering evidence outside the record. Majority opinion at 8–9. I agree with that. The majority also seems willing to accept that a double jeopardy claim not preserved by *Menna* can be expressly waived by a plea agreement. I agree with that too. But the majority thinks that the comprehensive waiver language in Lemke's plea agreement does not cover his failed double jeopardy claim, which was the mainspring of his defense before he decided to plead guilty to felony murder. That's where I disagree.

After the jury convicted Lemke of theft, but hung on the felony murder count, Arizona sought to retry him for felony

murder.  Lemke objected, raising his double jeopardy defense in a motion with the state trial court.  The trial judge denied the motion.  Lemke next raised the defense in a petition for special action — basically, an interlocutory appeal — with the Arizona Court of Appeals.  That court also rejected it. Lemke then sought to raise the defense in the Arizona Supreme Court, which refused to hear his claim.

Having exhausted his double jeopardy defense in the state courts, Lemke faced  going to trial again and, if convicted, pursuing his arguments on direct appeal or on collateral review in the federal courts.  He instead opted to make a deal with the State.  In exchange for a parole eligible sentence that would run concurrently with the sentence he was already serving for theft, Lemke promised to plead guilty to felony murder, end his legal challenges, and serve his time. The state kept its word; Lemke was sentenced to concurrent time on the felony murder charge, and was declared eligible for eventual parole.  That should have ended the matter, but then he filed a habeas corpus petition with our court.

The majority gets off on the wrong foot by misconstruing the plain language of Lemke's plea agreement, then compounds its misstep by ignoring the context in which the agreement was entered into.  The waiver language "is broad," the majority concedes, but they still find it insufficient because it doesn't specifically mention "double jeopardy" or any other particular subject matter.  It doesn't have to.  The two requirements for a valid waiver are that it must be "voluntary in the sense that it was the product of a free and deliberate choice," which is not in issue here, and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  Yes, the

Ninth Circuit requires an express waiver of collateral attack. *United States v. Benboe*, 157 F.3d 1181, 1183 (9th Cir. 1998); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). And, yes, the language must encompass what is actually being waived. *United States v. Leniear*, 574 F.3d 668, 672 (9th Cir. 2009). But under any fair understanding of language, Lemke's plea agreement meets those requirements. His sweeping commitment to give up "any and all" defenses "he has made or raised" surely encompasses the double jeopardy defense — the *only* defense that he had raised at all levels in the Arizona courts. And his categorical pledge that his waiver would extend to any "motions, defenses, objections, or requests" that he "could assert hereafter" just as surely covers a collateral attack. In spite of the majority's parsing, the language isn't ambiguous, superfluous, or redundant. It conveys Lemke's all-inclusive promise to stop defending against the charge. No amount of parsing can change that.[1]

The case that should guide our determination of whether Lemke's waiver was express enough is *Ricketts v. Adamson*, 483 U.S. 1, 8–9 (1987). In *Adamson*, a defendant who pled

---

[1] The majority says a § 2254 petition isn't a "motion[ ], defense[ ], objection[ ], or request[ ]." Majority opinion at 7. *Maybe* that's right, although our circuit has at least casually referred to § 2254 habeas petitions as "motions." *See, e.g.*, *Lee v. Lampert*, 653 F.3d 929, 935 n.10 (9th Cir. 2011) (en banc); *Boyd v. Newland*, 467 F.3d 1139, 1145 n.4 (9th Cir. 2006). This misses the point, though. Even assuming Lemke's § 2254 petition isn't a "motion," the double jeopardy claim driving the petition is certainly a "defense" or "objection" to the entry of judgment against him, just as it's one that Lemke had "made or raised" at the time he signed the plea agreement and that he "could assert hereafter." Because there is no ambiguity here, the benefit of the doubt principle that would have us construe the plea agreement in his favor doesn't apply. *See United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006).

guilty to a lesser charge under a plea agreement went back on his word after he received the benefit he bargained for. In response to the defendant's breach, the state reinstated the original charges and tried and convicted him. Our circuit on habeas review, like the majority here, held that the defendant's plea agreement didn't waive his double jeopardy claim because it didn't explicitly mention the words "double jeopardy." *Adamson v. Ricketts*, 789 F.2d 722, 728 (9th Cir. 1986) (en banc). But the Supreme Court dismissively rebuffed that cramped view, saying "we do not find it significant, as did the Court of Appeals, that 'double jeopardy' was not specifically waived by name in the plea agreement." 483 U.S. at 9. The point was, according to the Court, that more general language could be "*precisely* the equivalent to an agreement waiving the double jeopardy defense." *Id*. at 10. So it is here, where Lemke's commitment to "waive any and all defenses" subsumes the particular defense he raises and is therefore precisely equivalent to a lesser promise to "waive the defense of a double jeopardy."

The majority suggests that statements made by the Arizona trial judge during the change of plea colloquy show that Lemke retained the right to bring a federal habeas corpus petition. I don't see how. The judge correctly informed Lemke that, as part of his plea agreement, he had waived any right to appeal. But because Arizona, under its *state* constitution, permits a defendant to file a "petition for post conviction relief" in every criminal case, the judge went on to inform him of that. This right, known as "a Rule 32 of-right proceeding," *see State v. Ward*, 211 Ariz. 158, 161–62 (2005), is peculiar to Arizona and has nothing to do with federal habeas corpus. The judge made that clear by telling Lemke that his petition had to be filed with "the sentencing judge." Lemke eventually filed a Rule 32 petition, but it was

summarily denied because the sentencing judge found that every issue Lemke raised, including double jeopardy, "was either raisable on direct appeal or has been waived at trial or on appeal." See *Lemke v. Ryan*, Case No. CR 9-CV-1059 (D. Ariz), Doc. No. 15-7 (June 5, 2008). And, indeed, Lemke can't challenge that ruling in this court because a Rule 32 petition is strictly a *state* remedy that does not implicate federal habeas corpus jurisdiction. *See Hunt v. Vasquez*, 899 F.2d 878, 880 (9th Cir. 1990) (habeas corpus insures that a federal forum is available to vindicate a violation of a federal right; there is no federal right to any particular state law regime).

Lemke got what he bargained for, and I see no reason to let him out of his obligations under the plea agreement. "[T]he Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice." *United States v. Scott*, 437 U.S. 82, 99 (1978). If the state may, as in *Adamson*, prosecute a defendant on the original charges following his breach of a plea agreement, then it should also be permitted to hold him to the plea agreement in the first place. Lemke knew he had to abandon his double jeopardy defense in order to wrangle sentencing concessions from the State. He made a calculated and voluntary choice to waive it, and we should treat his choice no differently from the way the Supreme Court treated the choice made by the defendant in *Adamson*.

By failing to enforce Lemke's express waiver, we risk undermining the integrity of the plea bargaining process. "Plea bargains are an important — indeed an essential — component of our criminal justice system; they provide vast benefits to the government, to our courts, to the public and to

criminal defendants." *United States v. Gonzalez*, 981 F.2d 1037, 1040 (9th Cir. 1992) (Kozinski, dissenting). Parties bargain with the expectation that the bargains they reach will be enforced. Accordingly, our circuit has generally treated plea agreements as binding contracts, *United States v. Gonzales-Melchor*, 648 F.3d 959, 963 (9th Cir. 2011) ("We construe a plea agreement as a contract between a government and a defendant"), and absent good reason not to we respect and enforce the bargains the parties make.

Here the State bargained for a guilty plea to a murder charge, and offered Lemke a reduced sentence in exchange. But it also bargained for finality — that if the judge accepted and followed the plea agreement, the charge would stick and Lemke's murder conviction would be final. Our circuit has described finality as "perhaps the most important benefit of plea bargaining." *United States v. Navarro-Botello*, 912 F.2d 318, 322 (9th Cir. 1990). Except apparently in this case. In my view, it's simply unfair to let Lemke flout his obligations under the plea agreement, deprive the State of the benefit of its bargain, and put us to the task of reconsidering legal issues in a case that should have been final. *See United States v. Pratt*, 657 F.2d 218, 220 (8th Cir. 1981) (defendant "pleaded guilty, presumably, because he preferred the certainty of a maximum of ten years to the risk of conviction and punishment on each of six counts . . . . [W]e think it would be unfair . . . to consider now the double-jeopardy claim urged by defendant.").

A deal's a deal, and we should enforce this one.