NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LARRY D. BISHOP, | No. 22-55858 |
| Petitioner-Appellant, | D.C. No. 2:20-cv-07473-RGK-JEM |
| v. | |
| JAMES ROBERTSON, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

| | |
|---|---|
| JERRON DONALD HARRIS, | No. 23-55270 |
| Petitioner-Appellant, | D.C. No. 2:20-cv-06935-RGK-JEM |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; et al., | |
| Respondents-Appellees. | |

Appeals from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted June 12, 2025
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: CLIFTON, BYBEE, and FORREST, Circuit Judges.

Jerron Donald Harris and Larry D. Bishop ("Petitioners") appeal the dismissals by the district court of their 28 U.S.C. § 2254 petitions for writs of habeas corpus. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Petitioners have not demonstrated that the state court's last reasoned decision was either contrary to clearly established law or based upon an unreasonable determination of facts. Thus, we affirm the dismissals of their petitions.

In December 2012, members of a Pasadena gang drove an SUV through an intersection and fired shots at another car, hitting the driver and killing a bystander. Petitioners were jointly charged with multiple felonies, including murder, and tried together by a jury.

Before the jurors were impaneled, they were asked to fill out a questionnaire, which included the prompt to "describe your job." Juror No. 5 responded: "I am an Administrative Clerk for the City of Los Angeles. My job consists of filing and data entry." Later, in a declaration submitted after the trial by Petitioners' counsel, Juror No. 5 admitted that she "purposefully left out" the facts that she worked for the Los Angeles Police Department (LAPD) gangs and narcotics unit as an administrative clerk and that she had previously been a dispatcher for LAPD. In the declaration she attested that she "willfully chose to conceal" her employment history, because she had previously been on several jury

panels, had never been chosen, and had "always wanted to be on jury duty." Juror No. 5 was selected for service and impaneled. At some point during trial, she informed the rest of the jury of her work experience. Petitioners were found guilty of murder and sentenced to life without parole. They are currently in state custody.

Juror No. 5's actions came to light after the verdicts were returned. Both Petitioners filed motions for a new trial alleging misconduct by the juror, with Bishop's counsel requesting an evidentiary hearing on the matter.[1] They submitted declarations from Jurors No. 5 and 7 in support. The trial court concluded there was nothing in the declarations that demonstrated Juror No. 5 "used her position to give the jurors extraneous information," that the juror was credible when she "indicated she could be fair," and that her reason for concealing her position was "innocent." It held that there was no substantial likelihood of prejudice and denied the motions.

On direct appeal, the California Court of Appeal declined to decide whether the juror who provided truthful answers on voir dire committed misconduct when she omitted information she thought the parties would find relevant. Instead, the

_____

[1] The California Court of Appeal determined that Harris forfeited this claim before resolving both Petitioners' claims on the merits. We also choose to resolve Harris' claim on the merits. *Flournoy v. Small*, 681 F.3d 1000, 1004 n.1 (9th Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of the merits on habeas review, we are not required to do so when a petition clearly fails on the merits.") (citation omitted).

court assumed that Juror No. 5 engaged in misconduct that created a rebuttable presumption of prejudice, but concluded that the presumption of prejudice resulting from the misconduct was rebutted. Specifically, it stated: "After reviewing the entire record, including the nature of the purported misconduct and the surrounding circumstances, we find any presumption of prejudice is rebutted and there is no substantial likelihood that Juror No. 5 was biased against Defendants." In affirming the trial court's judgment, the California Court of Appeal pointed to Juror No. 5's declaration to support its conclusion that the juror's omission was innocent, rather than an indicator of bias. It deferred to the trial court's finding that Juror No. 5 was credible when she said she "could be fair." It also highlighted parts of the trial record to support its conclusion that Juror No. 5 "harbored no bias" against Petitioners.

Notably, in her declaration, Juror No. 5 admitted to conducting an "experiment" where she tried to identify passing drivers, challenging an eyewitness's testimony that placed Petitioner Bishop at the crime scene, and betting the other jurors $10 that they could not do the same. The California Court of Appeal noted that the trial court record contained "considerable evidence" that Bishop was not driving the car at the time of the drive-by shootings, and that Juror No. 5's experiment was aimed at discrediting the strongest evidence the prosecution had to support Bishop's placement as the driver. Thus, the court

4

concluded that there was no reason for Juror No. 5 to "behave in this manner if she was truly biased against [Petitioners] in the manner they suggest." Accordingly, the California Court of Appeal affirmed the trial court's judgment, and the Supreme Court of California denied the petitions for review.

Bishop and Harris filed 28 U.S.C. § 2254 petitions separately. The district court dismissed both federal habeas petitions with prejudice. In the process it observed that Ninth Circuit precedent found implied bias on the part of a juror involved "far more egregious" behavior than the instant case. The district court also denied Petitioners' certificates of appealability.

Petitioners were later granted certificates of appealability by our court on the same issue: whether they were deprived of their right to a trial by a fair and impartial jury because Juror No. 5 intentionally failed to disclose during voir dire that she was employed by the LAPD in the gang and narcotics unit.

A district court's denial of a federal habeas petition is reviewed de novo. *Lemke v. Ryan,* 719 F.3d 1093, 1096 (9th Cir. 2013). Because these petitions were filed after April 24, 1996, the deferential standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA) govern review. *Id.* And because the Supreme Court of California denied review, the California Court of Appeal's decision is the "last reasoned state court decision" addressing Petitioners' claims. *Id.* Under AEDPA, relief can only be granted if that decision was (1) "contrary to,

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2).

The Sixth Amendment guarantees all criminal defendants the right to an impartial jury. U.S. Const. amend. VI. The bias of even a single juror violates a defendant's constitutional right to a fair trial. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc). We agree with the district court's conclusion that Petitioners have failed to establish that the California Court of Appeal decision regarding the bias of Juror No. 5 was objectively unreasonable.

Petitioners first argue that they demonstrated bias on the part of Juror No. 5 and are entitled to a new trial. That characterization is misleading. Juror No. 5 was not questioned during voir dire about her responses, which were literally true. The declaration submitted by Petitioners established that she intentionally withheld information during voir dire, but "an intentionally dishonest answer [during voir dire] is not fatal, so long as the falsehood does not bespeak a lack of impartiality." *Dyer*, 151 F.3d at 973; *see also McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) ("The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."). The California Court of Appeal noted that Juror No. 5's responses

6

were "truthful[] and accurate[]" and, by including the name of her employer, she supplied more information than requested by the questionnaire. That court also noted it was "incumbent upon the attorneys to resolve any uncertainty in Juror No. 5's responses by asking follow-up questions" which they failed to do. And as discussed, there is evidence in the record regarding Juror No. 5's conduct that can reasonably be viewed as directly undermining the claim that she was biased against Petitioners.

Petitioners also contend the trial court erred in failing to conduct an evidentiary hearing on the issue of juror misconduct. The California Court of Appeal concluded that the trial court did not abuse its discretion by failing to conduct an evidentiary hearing because Petitioners had not adequately explained why an evidentiary hearing was needed. It concluded, noting its assumption of willful misconduct by the juror, that "there were no material, disputed issues of facts to resolve at an evidentiary hearing." Moreover, the record reveals that the trial court did hold a hearing during which it considered evidence presented by Petitioners of Juror No. 5's claimed bias. *See Smith v. Phillips*, 455 U.S. 209, 215 (1982) (holding that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias").

Allegations of a different form of improper conduct by a juror— communication with an outside contact—require courts to engage in a "two-step

framework": first, the court determines whether the contact was "presumptively prejudicial"; if so, then the burden shifts to "'the [state] to establish' the contact was, in fact, 'harmless.'" *Godoy v. Spearman*, 861 F.3d 956, 958 (9th Cir. 2017) (en banc) (citing *Remmer v. United States*, 347 U.S. 227, 229 (1954)) (alteration in original). The government argues that because contact by an outside party is treated more seriously than other forms of juror misconduct, neither *Remmer* nor *Godoy* are controlling. We need not decide whether third-party contact is more serious than the juror misconduct alleged here, however, because the California Court of Appeal assumed that Petitioners established a presumption of prejudice. That presumption can be rebutted, and the California Court of Appeal concluded that it had been.

Petitioners cite to our decision in *Godoy* for the proposition that "it was error for the court to rely on the very same statement from [the] declaration both to raise the presumption of prejudice and to rebut it." *Id.* at 959. After the Court of Appeal assumed juror misconduct, it also determined that the trial court was correct to find that an evidentiary hearing was not necessary because that presumption was rebutted. But that court did not rely solely on "the very same statement from [the] declaration" to rebut the presumption of evidence. It considered the declaration as a whole, as well as additional evidence from the record, to conclude that the presumption of prejudice had been rebutted. Our decision in *Godoy*, acknowledged

that possibility. 861 F.3d at 965 n.4. Petitioners have not demonstrated that the California Court of Appeal unreasonably applied federal law.

Ultimately, even if the state court arrived at what some might think to be an incorrect result, that result must be upheld so long as 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Cannedy v. Adams*, 706 F.3d 1148, 1157 (9th Cir. 2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Accordingly, under the "highly deferential" standard set by AEDPA, Petitioners are not entitled to relief. *Harrington*, 562 U.S. at 101.

**AFFIRMED**.